The next case on our calendar is Ghazi Abou Nahl v. George and others v. George Zard, Abou Jaoude, and others. Counsel, you may begin. Good morning, Your Honor, and may it please the Court, this is Mitchell Berger for appellants in this certified 1292B interlocutory appeal from the District Court. With the Court's permission, I have three points I'd like to address. First, plaintiff's Alien Tort Statute claim does not meet the SOSA requirement of a specific universal and obligatory international law norm under which defendants can be held liable. Second, plaintiff's ATS claim requires state action. And third, plaintiff's state action allegations do not meet ATS standards because they don't plausibly allege that these private defendants implemented state policy. Turning to the first point, plaintiff's ATS claim relies entirely on an international convention that we've called the Financing Convention. Plaintiffs concede this, and the District Court found that there is no other basis for their claim. Now, this Court's decision in Keebel tells us that the core question here on an Alien Tort Statute claim is who can be liable for what under the Financing Convention. This Court in Keebel, implementing SOSA, held that international law governs, and I'm quoting, who is liable for what, close quote, under the ATS. As importantly, this Court in the Velez case held that when, as here, an international convention is the sole relevant source of international law, then an ATS claim depends entirely on the terms of that convention. And in fact, that's why the restating fourth of foreign relations law, Section 413, recognizes that treaty-based jurisdiction, and that's what we have here, an international treaty, is a standalone category distinct from civil and criminal universal jurisdiction. The Financing Convention answers the Keebel question by telling us expressly who is liable for what. It expressly limits both the scope and the subjects of civil liability by telling us that civil liability is, number one, entirely elective, and number two, that civil liability is elective only for legal entities, not for individuals. As a result, civil liability for individuals is neither universal nor obligatory, and plaintiff's claim therefore fails the SOSA test. Mr. Berger, this is Judge Lynch. I'd like to ask a question about, is it part of your argument when you say that this lawsuit is not based on a specific international law norm? I thought, reading the briefs, that the easiest way to make that point might be that the lawsuit is a suit for breach of fiduciary duty, isn't it? Well, Your Honor, thank you for asking that question. The lawsuit, as we pointed out, is a follow-on proceeding to an abuse of control breach of fiduciary duty lawsuit that was brought in Lebanon and that the plaintiffs here lost before they chose to refile this case in the United States and dusted it up first as a RICO claim, and when that didn't work, they changed it to an alien tort statute claim. My only point, Your Honor- Well, you can call it an alien tort statute claim, but isn't the question like, what is the tort? And the problem I'm having, which may be oblique to the argument that you're making, and I'm trying to figure out whether it's a part of the argument that you're making, is that the plaintiffs here are not injured by terrorism, they're injured by mismanagement of the bank in which they were shareholders. Isn't that their problem? Yes, precisely, Your Honor. We make this point in our brief, if I may, which is part of the reason why we're on a second amended complaint here, was that the first amended complaint alleged an alien tort statute theory that my clients aided and abetted terrorism, and the district court correctly rejected that theory on the ground that the plaintiffs here were not victims of terrorism. But she said, I'm going to give you one more chance to plead a primary liability claim, but now you have to allege that money laundering is a violation of international law. But that doesn't change the substantive reality that Your Honor is pointing out, that what they have alleged here is abuse of control by majority shareholders, my clients, against the minority shareholders, plaintiffs, of a bank in Lebanon. That is a business tort, and they concede that at page eight of their brief, and we've argued, Your Honor, that's part of the reason why no state action is involved here, because this is fundamentally a business dispute unto which an ATS label has been put. The district court more or less signaled the plaintiffs that they could have one more shot at turning this into an alien tort statute claim, but it's a stretch. It is a reach because you have to be able to point to a source of civil liability in the financing convention. It couldn't be clearer. Article 5.2 of the convention says that if you're going to impose civil liability, it is elective. It is elective for each member state, and it can only be imposed on legal entities. If there were any doubt, 5.2 contains this compelling language. It says if a member state chooses to impose civil liability on legal entities, then, and to the criminal liability of individuals having committed the offenses. The treaty couldn't be clearer that the choice is binary here, that if you want to pursue an individual, it can only be criminal, and if it's going to be civil, then you have to opt into that civil liability, and it's only for legal entities. That is a fundamental failing of this complaint. It fails the SOSA test, even if you acknowledge that the alien tort statute label has any legs here. But that's one of three failings with this complaint. The other, and it's your point precisely, Judge Lynch, is that because we're dealing with what is fundamentally a business tort, it doesn't fall within the blockbuster genocide crimes against humanity exemptions from the state action requirements that are always subject to universal jurisdiction. This is a business dispute. Put the label on it if you want, but it still requires state action. This is Judge Walker. You made the point that universal jurisdiction is required for this to be actionable under the ATS, and that you're making the argument that there is no such universal jurisdiction. I don't think we should lose sight of the fact that what is at issue, it seems to me, is whether this is an actionable violation of international law, which notwithstanding the fact that it may be done for the same purposes of these other lawsuits that were brought and failed. The question I have is, with the jurisdictional point, is that really in order to be actionable, a violation of international law must be subject to universal jurisdiction. That's part of what goes into the question. I think it's restatement of third of foreign relations section 404 that deals with this particular question. I can just read that section. A state has jurisdiction to define and prescribe punishment for certain offenses recognized by the community of nations as of universal concern, such as piracy, slave trade, attacks on or hijacking of aircraft, genocide, war crimes, and perhaps certain acts of terrorism, even where none of the typical basis of jurisdiction is present. That is, the crime wasn't committed in the country that's prosecuting. The defendant isn't where the country is being prosecuted, nor is the plaintiff. That's universal jurisdiction, if I'm not mistaken. That section talks about certain acts of terrorism, but in this case, we're not talking about acts of terrorism. That was thrown out under the aid and abetting. We're talking about whether terrorist financing is subject to universal jurisdiction. I think what you pointed out is that universal jurisdiction arises out of acts of war crimes and piracy, slave trade, genocide, crimes against humanity, and that sort. Is this accurate as far as you can see? Yes, Your Honor, and let me just explain why, if I may, which is the section of the restatement third to which you're referring was restated in the restatement fourth as section 413 on universal jurisdiction. Here what's so important about that, because I'm sure plaintiff's counsel is going to and say, see, it said certain acts of terrorism, and as we see it, this is certain acts of terrorism. Well, restatement fourth, section 413, absolutely forecloses that argument because it says in comment two that on the one hand, there's standard universal jurisdiction, as Your Honor would say. On the other hand, there's a sui generis category called treaty-based jurisdiction, and as an precisely the convention that we have here, and so that's the bucket into which the restatement would put this claim, which is it's a sui generis treaty-based jurisdiction claim, which takes us right back to the question of what does this treaty allow? This treaty does not allow a claim, whatever you want to call it, even if you try to squeeze it into other acts of terrorism, it's not that. It is a treaty-based jurisdiction claim. This claim stands or falls by the terms of this convention, the terms of this convention foreclose it. Your Honor sees it on the universal point, but it's also, as Sosa tells us, it has to be specific, universal, and obligatory. The financing convention couldn't be clearer that civil liability of individuals is elective. It's not obligatory. It fails that test as well as the universality test. Because it's not subject to universal jurisdiction, Your Honor, it is also not exempt from the state action requirement. There was a second error the district court made in saying this is a subject of universal concern. I don't impose state action requirement. That was an error because when you look at the terms of this treaty, article 2.1, it makes it clear that only criminal offenses are subject to criminal universal jurisdiction. Civil liability is not subject to civil universal jurisdiction under this treaty. Thirdly, because state action is required, the district court committed another error when alternatively it held that state action was shown here because plaintiffs alleged that the Central Bank of Lebanon turned a blind eye to money laundering at Lebanese Canadian Bank. This gets the court completely into the thicket of endorsing a theory of alien tort statute liability that requires the court to find that the Central Bank of Lebanon is in cahoots with these private plaintiffs. That is foreclosed for two reasons. Number one, the allegation and the complaint is they turned a blind eye to money laundering precisely to favor one of the defendants here, Mr. Hamdoun. That doesn't satisfy the requirement that state action shows state policy. What that shows is entirely ad hoc and ad hominem allegations about why the Central Bank did something. Secondly, it is quite clear we put this into our brief. The United States government has a clearly stated policy that it works closely with the Central Bank of Lebanon, and the Central Bank of Lebanon is a bulwark against Hezbollah. To allow an alien tort statute theory to go forward that impeaches the bona fides of the Central Bank of Lebanon causes all the problems the Supreme Court has told us about allowing ATS claims to become a source of friction between the United States and other countries. So for those three reasons, I would say that under this court, both de novo and more searching review standard for ATS claims, which was expounded in the Kaddish case and in Rivelez case, the district court's order should be reversed. The ATS claim should be dismissed. And because it's the sole remaining claim in the case, the case should be dismissed. Thank you. Counselor, your time has long expired. Let me turn to the athletes. Good morning, Your Honor. You have reserved three minutes, Mr. Berger, for rebuttal. Proceed. Good morning, Your Honors. May it please the court. Christian Pastilli, Covington & Burling for plaintiff's athletes. The core holding of the U.S. Supreme Court's decision in Sosa was that, and to the contrary, courts may, without any further legislative action, recognize new causes of action based upon norms of international law, if those norms are specific, universal, and obligatory. As of December 31, 2010, when defendants came to finance Hezbollah was still in operation, 173 countries, including the United States, had ratified the terror financing convention. And the convention- That only takes you so far, Counselor. That only takes you to the fact that there is an international norm in which there's a consensus, but it doesn't get you to the question of whether it can be the basis of a lawsuit under the ATS, which seems to require as well, in order to have that basis, universal jurisdiction and universality of appreciation that financing of terrorism is bad and should be made criminal and no state should engage in it. It's very different from saying that there's universal jurisdiction, which means that a party who is bringing the suit but has no connection with the actual tort in this country and was not a victim of the tort in this country, nor was, and there's no, and the defendant is not in this country, and the tort itself, the financing is not in this country directly, can be prosecuted by any country in the world. So respectfully, Your Honor, it's not a question of universal jurisdiction. The question under SOSA is whether the norm is specific and universal. Here, in this case, to the extent your question goes to whether there's an adequate nexus to the United States, that's a separate question that wasn't raised below, and there is a very important nexus to the United States in this case, which is that the terror financing transaction that defendants caused to occur were routed through banks in New York. So to the extent the question, is there a nexus to the United States, that's satisfied here. But the problem I have is that even where it requires that even where none of the typical basis of jurisdiction is present, that a case like this can be brought in any country in the world, and that subject to universal, it seems to me, the universal jurisdiction requirement is a question of international law, and it's a question of whether there's a consensus on the question. And this consensus, as I understand it, is pretty clear when it comes to crimes against humanity, genocide, piracy, and the like, but not typical, not cases like this. You know, there are conventions against drug trafficking, but that really can't be prosecuted anywhere in the world by a country that is not connected to it. So under the Sosa test, the question is whether the norm is sufficiently specific and has achieved such universal recognition that it becomes part of the law of nations, and therefore is effectively incorporated into the federal common law. And applying that Sosa test and applying Second Circuit precedent under Sosa, it's clear that the Terror Financing Convention has achieved that level of universal acceptance. Mr. Castelli, this is Judge Lynch. Could I ask you to address a question that I asked Mr. Berger? This is all very abstract, it seems to me, as a discussion of is there a let me assume for the moment that you're right, that there is. I have trouble with the sort of basic tort principle here. It seems to me you'd have a very different case if you were representing someone who was the victim of a suicide bombing that was financed through this bank and through these officers of this bank, and you were saying under the Alien Tort Statute, I'm the victim of a tort. Here, I'm having trouble getting basic tort principles like proximate cause and whether there is a cause of action that lies in favor of a shareholder of the bank. It would seem to me, and this is the question I'm asking you to address, that what you're really arguing here is not a tort of financing terrorism under international law, but a tort of mismanagement, breach of fiduciary duty, breach of proper management by the bank officers, which is what causes the harm to you. Why does that have anything to do with international law? Well, I appreciate the opportunity to answer that, and I would say, Your Honor, there's really two separate questions, only one of which is before this court. The first question is whether this category of defendant is amenable to suit under the Alien Tort Statute. That's a question of international law, and we believe they are amenable to suit because they have violated a universal and specific norm against terror financing. But the second question, which I think Your Honor is getting at, is whether this particular plaintiff may bring suit based on that international law norm. That's a question of domestic law, and we would say that that turns on really just basic principles of Article III standing. Well, why would that be? Why isn't it a question of what the Alien Tort Statute allows? The Alien Tort Statute gives jurisdiction very broadly over torts committed by aliens, I suppose. But what Sosa is telling us is that we should be cautious about recognizing particular causes of action, and you're asking us to recognize a cause of action, not for victims of terrorism that is financed by business entities, but by one businessman against another businessman who's saying that his investment was managed improperly and unlawfully and in breach of fiduciary duty. It would be the same claim if Mr. Abujaoud had put the money into drug trafficking or put the money into his own That's the cause of action that you're alleging is that taking that money and putting it into terrorism creates a cause of action under this international convention, not in the abstract, but in favor of your client. What we are saying is that these defendants, by financing the Assad regime in the Syrian Civil War, violated a firmly established international norm against terror financing, and that our clients, the plaintiffs, suffered a concrete and particularized injury as a direct result of that terror financing. Now, there are other ways of being harmed. This is Jess Cooler. Could you just describe the exact harm that your clients suffered because of the financing? Sure. So our clients were investors in the Lebanese-Canadian Bank. Did they lose money? They were non-managing. They didn't have control over the bank. The defendants in this case controlled the bank. Unbeknownst to my client, they used the bank as a vehicle to launder money for Hezbollah and to finance Hezbollah-sponsored terrorism, including- I understand that, counsel, but how did your clients lose money? Our clients lost money when the United States government initiated a forfeiture action against the bank seizing a large quantity of the Lebanese-Canadian Bank's assets, precisely because the defendants in this case were engaged in the financing of terrorism. And so the financing of terrorism led directly to a concrete and particularized harm to my clients in this case. And do you have any case in which anything like that, as a sort of, that's your approximate cause, that's your harm, was recognized as a tort? It seems to me that even the cases that have failed for one reason or another in the Supreme Court or in this court have been cases where there is a- law, whereas your claim is predicated on something that's internal to the corporation. Well, the question that the cases under the Alien Tort Statute address is a different question. It is whether a particular defendant falls within a category such that they are a proper defendant in a case involving whatever the norm in question is. This is really a different question. Essentially what you're asking is analogous to the zone of interest analysis that you see in other cases outside the Alien Tort Statute. Yeah, fair enough. But the question that the Supreme Court wants us to address is whether we should be recognizing a new sort of international law tort. And it sounds to me as if the tort that you are actually asking us to endorse is a breach of fiduciary duty that involves misapplication of funds in a way that violates international law, as opposed to simply a harm that results from the violation of international law. You're one step away, aren't you? Respectfully, Your Honor, the tort we are asking this court to recognize is a tort by private individuals who engage in the financing of terror. Now, there may be a separate question as to whether my clients, the plaintiffs, have standing to bring a claim under that tort, or it's not really a question of standing, it's whether they're within the zone of interest. No, that's right. But excuse me though, Mr. Stille, isn't that exactly the question that always inheres in recognizing a tort claim? It's whether you've stated a claim. It's not about Article III standing. You've got an injury, and if we decided that you could bring a tort claim to redress that injury, it would presumably be redressable by ordering the defendants to pay you money. It doesn't sound like an Article III problem or a standing problem at all. It's a problem of what is the nature of the tort liability. When we have a tort of battery, the tort is punching somebody, and the plaintiff is the person punched, and the defendant is the puncher. Here, the reasons why this might be a... Let's concede for the sake of the argument that it is a universal norm that people shouldn't finance terrorism. That doesn't mean that your client is the victim of a tort that is recognized by international law at all, let alone universally. Well, respectfully, Your Honor, that's a separate question that wasn't raised below and hasn't been briefed. The question before this court on interlocutory appeal is whether these defendants are subject to a specific and universal norm. It wasn't briefed below whether these particular plaintiffs fall within the zone of interest that they should receive protection from under that norm. I would point out that the zone of interest test, even if it applied to the Alien Tort Statute, is not a question of subject matter jurisdiction and can be waived. At no point did the defendants argue that we are the wrong plaintiffs. Their argument was that there's no specific universal norm that's been violated. There very clearly is a specific universal norm that's been violated. The time has expired. In conclusion, what would you want to say? Just in conclusion, I'd like to very briefly address Plaintiff's point that there's no cause of action here because the convention itself doesn't provide a civil remedy. I would say that was squarely rejected by this court in the Abdullahi case. The convention at issue there did not call for a private remedy. This court said that under SOSA, it was the wrong approach to find that dispositive. We would suggest that the absence of a civil remedy in the convention here, likewise, doesn't provide a reason to reverse the well-reasoned decision of the court below. Thank you, counsel. Mr. Berger, you've retained three minutes for rebuttal. Yes, Your Honor. I'll try to move expeditiously. Let me begin where Mr. Pastilli ended, which is the Abdullahi case. It has nothing to do with this Abdullahi-involved convention and other sources of international law that were simply silent on the question of who could be held civilly liable. The convention here is entirely different. It gives us clear rules of the road as to who can be held civilly liable. To Judge Lynch's question, which I don't think Mr. Pastilli ever answered, which is, what's the cause of action here? Mr. Pastilli's answer was, well, there's an international norm, and you can find it when it says terrorism financing is bad. That begs two questions, both of which show his argument is incorrect. One is, this court in Kiyobel said, you still must ask the question under SOSA, who is liable for what? Not just, is there a norm? And then SOSA itself said that the creation of a private right of action raises issues beyond the mere consideration of whether the underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion. That's 542 U.S. at 727. What SOSA said is, uh-uh, it's not enough to say there's a norm that says it's criminal to engage in terrorism financing. There's a further step you must go through. It's the step this court identified in Kiyobel. You must ask the question of who is liable for what. The finance convention gives us the answer. At best, legal entities can be liable for civilly, but individuals cannot. The United States is not elected to give aliens a claim, and that is the only way you could augment the convention. I will add just one or two other points here, which is to Judge Lynch's question, which I think is the gravamen of this claim. It's revealed that the common law claims that were as Judge Lynch says, for breach of fiduciary duty, and as I said, for abuse of control, that is what we're dealing with here. This is a dispute between minority and majority shareholders to which somebody is trying to affix an ATS label. Under SOSA, under Kiyobel, it won't work. The district court's decision should be reversed, and the case should be ordered to be dismissed. Thank you. I have one brief question on that. I have one brief question on that last point, if I could ask, and that is that the cases before us are in interlocutory jurisdiction, and the questions certified matter, it seems to me. Also, was this breach of fiduciary duty, the court questions that Judge Lynch has raised, which are serious questions, was that part of the certification? Your Honor, it was not part of the certification, but the law in the circuit is quite clear that once, as another panel of this court did, once it grants leave to take a 1292 appeal, the entire order, not just the district court's certification of the question, comes up for full de novo review. If it comes up, then what do we make of the fact that it isn't meaningfully addressed by the briefing? The nature of the plaintiff, certainly, I suppose, if the case, I don't know the answer to whether or not the plaintiff could appeal the dismissal of the common law claims. They were dismissed for lack of timeliness under the statute of limitations in New York. Because the entire order came up for appeal, I would suggest that they had the ability at that point, once this court granted permission to appeal, to cross-appeal on any issue that they would want. Well, Mr. Berger, I'm not raising a question about the common law claims. Those, as I understand it, rise or fall as supplemental jurisdiction. The issue here is whether we are recognizing a novel cause of action under the alien tort statute. If we adopt the plaintiff's position here, and the question I'm raising is whether this is inherently not a claim based on international law, really, because the harm is not caused by the violation of international law. The harm is essentially caused by misapplication of funds or abuse of corporate authority or abuse of fiduciary duty. However, one wants to characterize that. That may be a tort or may not be a tort under the law of New York or under the law of Lebanon or anywhere else. The question is whether this kind of claim is authorized by the alien tort statute. And, Your Honor, if I get permission from the presiding judge to answer your question, I know I'm out of time, but I would like to say it's important. You may answer the question. Thank you, Judge Pooler. Your Honor, I would say in answering that question, it's very important that they have one additional fact. I agree with everything you said. I think it does not amount to harm caused by money laundering. Importantly, although we have two individuals here in whose name this appeal has been taken, the claim, the alien tort statute claim is actually asserted derivatively on behalf of Lebanese Canadian Bank. We separately briefed below that a derivative claim of this type cannot be maintained under Lebanese law, but I think it exemplifies your point, Judge Lynch, and also Judge Pooler asked this question. What is the harm here? The harm is, according to these plaintiffs, that the value of Lebanese Canadian Bank, in which plaintiffs were shareholders, went down because Lebanese Canadian Bank had to forfeit some money to the United States government. Their harm is only indirect in that they say that their minority shares in LCB accordingly were worth less. The question is, was LCB harmed in the way that this financing convention recognizes by alleged money laundering at LCB? The answer to that is clearly no, because it was not by terrorism financed by money laundering that LCB was injured. Thank you, counsel. Thank you both for a reserved decision on this interesting